IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Charles McLendon, | Civil Action No.: 4:13-cv-3403-BHH |
| Plaintiff, | |
| vs. | **ORDER AND OPINION** |
| Horry County Police Department, Scott Rutherford. Johnny Harrelson, Kristin Dawn Harmon, Saundra Rhodes, Christopher John Arakas, Phillip Thompson, and Horry County Sheriff's Department, | |
| Defendants. | |

On December 5, 2013, Plaintiff filed this 42 U.S.C. § 1983 action alleging claims related to his previous employment as an officer with the Horry County Police Department ("HCPD"), his December 2012 arrest for criminal domestic violence ("CDV") and misconduct in office, and his May 2013 arrest for violation of a court order.[1] In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., this matter was referred to United States Magistrate Kaymani D. West, for consideration of pretrial matters. The Magistrate Judge prepared a thorough Report and Recommendation ("Report") which recommends that Defendants'[2] motion for summary judgment be granted in part and denied in part. (ECF No. 101.) Specifically, she recommends

---

[1] Plaintiff filed an Amended Complaint on September 25, 2014. (ECF No. 43.)
[2] Defendants Scott Rutherford ("Rutherford"), Johnny Harrelson ("Harrelson"), Saundra Rhodes ("Rhodes"), Christopher John Arakas ("Arakas"), Phillip Thompson ("Thompson"), Horry County Sheriff's Department ("HCSD"), and Horry County Police Department ("HCPD") filed this motion for summary judgment. Defendant Kristin Dawn Harmon ("Harmon") is not a party to the motion under consideration; however, for convenience, the Court refers to the movants collectively as "Defendants".

1

dismissing Arakas from the case on the basis of judicial immunity. She further recommends granting summary judgment on Plaintiff's § 1983 causes of action and Plaintiff's conversion claim pursuant to § 1983.[3] However, she recommends denying summary judgment on Plaintiff's remaining causes of action on the basis that Defendants rely solely on an inapplicable United States Supreme Court case to argue for summary judgment. Defendants and Plaintiff filed timely objections to the Report. (ECF Nos. 103; 104.) For the reasons set forth herein, the Court adopts the Report in part and dismisses all of Plaintiff's claims.

## BACKGROUND AND PROCEDURAL HISTORY

The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them and summarizes below only in relevant part. Plaintiff filed this matter on December 5, 2013, alleging violations of his constitutional rights and state law claims. (ECF No. 1-1.) Specifically, Plaintiff brings a § 1983 claim against the movant Defendants for violation of his Fourth Amendment rights as a result of his arrests. (ECF No. 43 at 8.) Plaintiff also brings state law claims for: (1) intentional interference with a contract against Harrelson and Rutherford; (2) wrongful termination in violation of public policy against HCPD; (3) abuse of process against Rutherford; (4) intentional infliction of emotional distress against all Defendants; (5) conversion against one unspecified Defendant; and (6) assault and slander against Harmon. (*Id.* at 10–15.) Finally, Plaintiff

---

[3] The Magistrate Judge states that she "does not offer any ruling concerning whether another type of conversion claim based on state law could proceed." (ECF No. 101 at 36.) Plaintiff does not mention his conversion claim in his objections and provides no other basis for this claim to proceed. Accordingly, the Court only reviews the Magistrate Judge's conclusions on this claim for clear error and limits its analysis to a conversion claim pursuant to § 1983.

2

brings a 42 U.S.C. § 1981 claim of retaliation against HCPD and Rutherford. (*Id.* at 10–16.)

On March 17, 2015, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 77.) After consideration of the response filed in opposition to the motion for summary judgment (ECF No. 88) and Defendants' reply (ECF No. 96), the Magistrate Judge issued a Report and Recommendation recommending that the motion for summary judgment be granted in part and denied in part. (ECF No. 101.) The Court has reviewed the objections to the Report, and finds merit in Defendants' objections. Therefore, it will grant Defendants' objections and dismiss all of Plaintiff's claims.[4]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b)(1). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d

---

[4] As always, the Court says only what is necessary to address the parties' objections against the already meaningful backdrop of a thorough Report of the Magistrate Judge, exhaustive recitation of law and fact exists there.

44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

As noted above, both Plaintiff and Defendants filed objections to the Magistrate Judge's Report, which the Court has carefully reviewed. The Court will address the objections in turn. Plaintiff has objected to the Magistrate Judge's recommendation that: (1) Arakas is entitled to judicial immunity and should be dismissed form this litigation; (2) summary judgment is appropriate on Plaintiff's § 1983 claim as it relates to his claims against Rutherford for the 2012 arrest, Arakas for the May 2013 arrest, and Thompson for Plaintiff's treatment in the detention center; and (3) summary judgment is appropriate on Plaintiff's claim for intentional infliction of emotional distress. (ECF No. 103 at 2–8.)

Respectfully, Plaintiff's objections are largely restatements of arguments made to, and rejected by, the Magistrate Judge. *See Hendrix v. Colvin*, 2013 WL 2407126, at *4 (D.S.C. June 3, 2013); *see also Jackson v. Astrue*, 2011 WL 1883026 (W.D.N.C. May 17, 2011); *Aldrich v. Bock*, 327 F. Supp.2d 743, 747 (E.D. Mich. 2004). "Examining anew arguments already assessed in the report of a magistrate judge would waste judicial resources; parties must explain *why* the magistrate judge's report is erroneous, rather than simply rehashing their prior filings and stating the report's assessment was wrong." *Hendrix*, 2013 WL 2407126, at *4. Absent proper objections, the district court must "'only satisfy itself that there is no clear error on the face of the record in order to accept the

recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 Advisory Committee's Note).

The Court has considered Plaintiff's objections *de novo* and finds them insufficient to reject the recommendations of the Magistrate Judge. In her exceptionally thorough thirty-eight page Report, the Magistrate Judge engaged in a thoughtful and comprehensive analysis of Plaintiff's claims.[5] She first recommended that Horry County Magistrate Arakas be dismissed pursuant to the doctrine of judicial immunity. (ECF No. 101 at 17.) Petitioner argues that Arakas is not subject to judicial immunity because he "acted beyond his authority of subject matter" in issuing Plaintiff's arrest warrant. (ECF No. 103 at 4–5.) The Magistrate Judge expressly addressed this argument in the Report. She recognized the two narrow exceptions to absolute judicial immunity from civil liability and considered Plaintiff's assertion that Arakas' actions fall within the second exception—"when a judge's actions, though judicial in nature, are taken in the complete absence of jurisdiction." (ECF No. 101 at 16 (citing *Mireles v. Waco*, 502 U.S. 9, 12 (1991)).) The Magistrate Judge noted the Fourth Circuit Court of Appeals has previously found that judicial immunity barred a lawsuit against a magistrate who ordered the arrest of the plaintiff without a warrant. Specifically, she noted that in *King v. Myers,* 973 F.2d 354 (4th Cir. 1992), the court found

> [the magistrate's] actions were judicial in that, while she may have exceeded her authority in the manner in which she ordered the arrest, she performed a function 'normally performed by a judge.' *Stump v. Sparkman*, 435 U.S. [349, 362 (1978)]. Therefore, the district court properly determined that [the magistrate] was entitled to judicial immunity.

---

[5] Here, the Court addresses the Magistrate Judge's findings to which Plaintiff specifically objects.

5

*Id.* at 358.

Looking to the function Arakas served during the events at issue, the Magistrate Judge found that "Arakas signed an arrest warrant for Plaintiff that was sought by HCPD Officer Ruggerio. The warrant indicated an offense based on S.C. Code Ann. § 16-25-20(D). An offense pursuant to that subsection 'may be tried in summary court.'"[6] (ECF No. 101 at 17 (quoting § 16-25-20(D)(1)).) Accordingly, Arakas "performed a function normally performed by a judge"—there is no basis to find that Arakas acted without jurisdiction in issuing Plaintiff's arrest warrant. *King*, 973 F.2d at 356–58. This objection is therefore overruled.

The Magistrate Judge next recommended that summary judgment be granted on Plaintiff's claim that his December 2012 arrest violated his Fourth Amendment rights. (ECF No. 101 at 23.) Under this claim, Plaintiff alleges that he was falsely arrested for CDV "in violation of the law" in December 2012 when it was clear from the facts that Harmon was the aggressor. (ECF No. 88 at 33.) Here, the Magistrate Judge first correctly noted that the only individual Defendant even arguably involved in this incident was Rutherford, and any claims against Rhodes, Harrelson, or Thompson, would need to proceed based on their supervisory relationship to Rutherford. (*Id.*) She correctly found that Plaintiff's pleadings did not attribute any actions to Rhodes, Harrelson, or Thompson, and failed to set forth any allegations that the claimed wrongs were the result of the effectuating of any official policy or practice of HCPD or HCSD. (*Id.* at 24.) Thus,

---

[6] South Carolina's magistrate courts and municipal courts are known as summary courts. S.C. Code Ann. § 22-3-730 (2007) ("All proceedings before magistrates shall be summary . . . ."); *see State v. Long*, 753 S.E.2d 425, 427 (S.C. 2014).

6

she properly dismissed any § 1983 claims relating to the December 2012 arrest against these Defendants. (*Id.*)

As for Rutherford, the Magistrate Judge noted that "Plaintiff has acknowledged that only Officer [Jodi] Ridgeway was involved in the decision to charge Plaintiff with CDV" and "[i]t is undisputed that Ridgeway, not Rutherford, effected Plaintiff's arrest." (*Id.*) Here, Plaintiff objects to the Magistrate Judge's finding that "it is undisputed that Ridgeway instigated the arrest." (ECF No. 103 at 5.) In support, Plaintiff rehashes allegations already considered at length by the Magistrate Judge, including his allegation that "Rutherford informed Ridgeway [] she would arrest the Plaintiff and not Harmon." (ECF No. 103 at 6.)

In the factual summary of the Report, the Magistrate Judge explored the allegations of Rutherford's involvement with the 2012 arrest in detail. She recounted Rutherford's deposition testimony that it was "the farthest thing from the truth" that he, and not Officer Ridgeway,[7] made the decision to arrest Plaintiff on December 3, 2012. (ECF Nos. 101 at 11; 88-23 at 13–14.) Further, Rutherford testified that he did not recall having had a conversation with Officer Ridgeway in which Rutherford was advised that Harmon, and not Plaintiff, was the one to make their argument physical. (ECF Nos. 101 at 11; 88-23 at 14.) The Magistrate Judge noted Rutherford's explanation that he was present when Plaintiff was arrested because he was aware of an earlier incident that that occurred at the residence while Plaintiff was on duty, and Rutherford "thought it was [his] responsibility to go see if [he] could assist and get a better understanding of what had transpired earlier so [he] could pass it on to [his] boss." (ECF Nos. 101 at 11; 88-23 at 3.)

---

[7] Officer Ridgeway has not been deposed in this action.

Based on the evidence in the record, the Court agrees with the Magistrate Judge that there is no genuine issue of material fact that precludes granting summary judgment on Plaintiff's § 1983 claim concerning his December 2012 arrest. Plaintiff's objection is therefore overruled.

The Magistrate Judge next "recommended that summary judgment on Plaintiff's § 1983 cause of action be granted as to events concerning the May 2013 arrest [for violation of a protective order], and the court need not reach the issue of whether there was probable cause to support the May 2013 arrest." (ECF No. 101 at 26.) She further found that Plaintiff failed to establish any violation of his constitutional rights for his treatment at the detention center immediately following his arrest. (*Id.*) Specifically, she found that Plaintiff had not raised any allegations against Thompson in connection to his treatment at the detention center other than that Thompson oversees the detention facility. (*Id.*) She properly granted summary judgment as to Plaintiff's § 1983 claims against Thompson, noting that "to demonstrate an individual such as Sheriff Thompson could be liable for actions merely because he is the Sheriff and in charge of the detention center, a § 1983 plaintiff must demonstrate much more." (*Id.* at 27.)

Here, Plaintiff first objects that "[t]he 2013 arrest was specifically a violation of the Plaintiff's rights based on the actions of Arakas. Arakas did not have jurisdiction . . . ." (ECF No. 103 at 7–8.) However, for reasons previously explained, Arakas was appropriately dismissed from this action, as he is entitled to judicial immunity. Accordingly, this objection is overruled.

Plaintiff further objects that "[t]he actions of . . . Thompson through his employees violated the Plaintiff's rights." (ECF No. 103 at 8.) He provides no argument or authority for this objection, however. The Magistrate Judge thoroughly addressed this allegation in the Report, finding that "[o]rdinarily [a plaintiff] cannot satisfy the burden of proof [to establish supervisory liability] by pointing to a single incident or isolated incidents." (ECF No. 101 at 27 (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)).) Plaintiff offered no substantive allegations against Thompson in any pleadings. Accordingly, the Court finds no error here and overrules this objection.

The Magistrate Judge next recommended that summary judgment be granted on Plaintiff's claim for intentional infliction of emotional distress because "Plaintiff has not met his burden of establishing a prima facie case of conduct that rises to the level of outrage under South Carolina law." (ECF No. 101 at 33 (citing *Johnson v. Dailey*, 457 S.E.2d 613, 615 (S.C. 1995) (noting the court determines, as a matter of law, whether a plaintiff's complained-of-conduct was "so extreme and outrageous it exceed[ed] all possible bounds of decency, and [was] regarded as atrocious and utterly intolerable in a civilized society")).)

Under this claim, Plaintiff alleges that Defendants' "behavior was absurd, intentional, reckless and inflicted severe emotional distress," and that the actions were "calculated to emotionally harm the Plaintiff[,]" "by their illegal actions of reporting false information regarding the Plaintiff, slandering the Plaintiff and bringing about the Plaintiff's termination of employment." (ECF No. 43 at 13.) The Magistrate Judge engaged in a lengthy analysis of this claim, recognizing Plaintiff's argument that the

situation must be examined "as a whole and not singularly." (ECF No. 101 at 30–35.) She properly considered each of Plaintiff's allegations under this claim, first finding that Plaintiff had not "demonstrated the general way he was treated after making reports rises to the level of actionable outrage." (*Id.* at 33.) Specifically, she noted that the alleged unfair treatment, "which arguably involved Plaintiff being removed from motorcycle duty and being required to take shifts he did not want, is not so 'unnecessarily harsh' that a jury could find it to exceed all possible bounds of decency." (Id. (citing, e.g., *Wright v. Sparrow*, 381 S.E.2d 503, 505–506 (S.C. Ct. App. 1989) (finding allegations that supervisor built a case to justify firing the plaintiff insufficient as a matter of law to constitute the tort of outrage)).) She then found that "Rutherford's alleged actions surrounding Plaintiff's December 2012 arrest—even if accurate—do not rise to the level of conduct from which a jury could find for Plaintiff as to the cause of action for intentional infliction of emotional distress." (*Id.* at 34.)

Here, Plaintiff rehashes the same arguments previously considered by the Magistrate Judge and offers nothing more than conclusory allegations. For example, Plaintiff argues that "it is clear on its face that the Defendants were out to harm the Plaintiff" during the December 2012 arrest and the May 2013 arrest. (ECF No. 103 at 8.) However, he provides no support for this assertion. After careful review, the Court finds no error in the Magistrate Judge's analysis of this claim and overrules this objection.

Having carefully considered Plaintiff's objections *de novo* and finding them to be without merit,[8] the Court turns to Defendants' objections. As an initial matter,

---

[8] Whatever additional objections Plaintiff may mean, they are simply renewals of arguments considered, and properly rejected, in the Report.

Defendants' filing raises new substantive arguments that were not made in the pleadings before the Magistrate Judge. However, "the Fourth Circuit has long held that 'as part of its obligation to determine *de novo* any issue to which proper objection is made, a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the magistrate.'" *Baker v. Colvin*, No. 6:14-CV-240, 2015 WL 3562164, at *2 (D.S.C. June 5, 2015) (quoting *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)). Accordingly, the court will consider Defendants' new arguments.

Defendants first object to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiff's claim for retaliation brought pursuant to 42 U.S.C. § 1981. (ECF No. 104 at 1.) In the Report, the Magistrate Judge noted that this claim concerned retaliation in the employment context, and Defendants sought summary judgment here based on Plaintiff's claims of retaliation while at the detention center. (ECF No. 101 at 36.) Thus, because Defendants did not address Plaintiff's allegations of retaliation in the employment context, the Magistrate Judge recommended that summary judgment be denied "based on the record before the court." (*Id.* at 36–37.)

Defendants now address Plaintiff's retaliation claim in the employment context— specifically, Plaintiff's allegations that he was retaliated against for reporting "racist remarks within his precinct" and that "Defendant took adverse employment action against the Plaintiff" because he had reported those remarks. (ECF Nos. 104 at 1; 43 at 15–16.) To establish a prima facie case under Title VII for retaliation, the plaintiff's evidence must demonstrate that: (1) he engaged in protected activity under Title VII; (2) the employer took adverse employment action against him; and (3) there was a causal

11

connection between the protected activity engaged in by the plaintiff and the subsequent action taken by the defendant. *Price v. Thompson*, 380 F.3d 209, 212 (4th Cir. 2004) (citations omitted). This is known as the *McDonnell Douglas* framework, first articulated by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, Defendants assert that Plaintiff cannot establish that he engaged in any protected activity. (ECF No. 104 at 4.) Protected activities fall into two distinct categories: participation or opposition.[9] *See* 42 U.S.C. § 2000e-3(a) (West 1994). To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. *See Armstrong v. Index Journal Co.*, 647 F.2d 441, 448 (4th Cir. 1981). Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities. *See id.*

Plaintiff alleges that he engaged in protected activity when he met with Saundra Rhodes in June 2012 "to report illegal activities within the Southern Division." (ECF No. 43 at 5.) The "illegal activities" at issue were racist remarks allegedly made by Plaintiff's direct supervisor, Jack Stewart ("Stewart"). (ECF No. 88 at 9.) Plaintiff concedes, however, that "the racist comments were never reported because the Chief [Rhodes] never called me back to talk to me so I could report them." (ECF No. 43 at 5.) Plaintiff's affidavit sheds further light on this claim. He states he "never reported Stewart's racist comments [to Rhodes] for fear of retaliation from Rutherford, Stewart and being labeled

---

[9] It is clear that Plaintiff did not engage in protected activity constituting participation. *See* § 2000e-3(a) (outlining the activities that constitute participation: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII).

a snitch." (ECF No. 88-5 at 9.) He further avers that he "did make mention to Sgt. Mueller [a co-worker] that Stewart had made racist comments about a black Sgt. and called him vulgar names and that I a[m] recording the vulgar comments, but never went into detail." (*Id.*)

Based on this evidence, the Court finds that Plaintiff has failed to establish a prima facie case under Title VII for retaliation. Plaintiff maintains that he never reported Stewart's racist remarks to his immediate supervisor, Rhodes. While Plaintiff avers that he reported these remarks to a co-worker, he never alleges that this co-worker informed anyone else of Plaintiff's report, much less anyone in a supervisory role. Indeed, it is undisputed that Rhodes—the relevant decisionmaker[10]—was unaware that Plaintiff had ever complained of Stewart's racist remarks. Accordingly, even if Plaintiff could establish that he engaged in protected activity by voicing his opinions on Stewart's racist remarks to Mueller, he has not established any connection between the adverse employment action and the protected activity. *See Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) ("To satisfy the third element, the employer must have taken the adverse employment action *because* the plaintiff engaged in a protected activity. Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.") (citing *Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 267 (5th Cir. 1994) (dismissing claim because no evidence that relevant decisionmaker knew that plaintiff had complained of discrimination)); *Hudson v. Southern Ductile Casting Corp.*, 849 F.2d

---

[10] It is undisputed that Rhodes made the decision to terminate Plaintiff. (ECF No. 88-22 at 7.)

1372, 1376 (11th Cir. 1988) (dismissing claim because relevant decisionmaker was unaware that plaintiff had filed a complaint with the EEOC); *Talley v. United States Postal Serv.*, 720 F.2d 505, 508 (8th Cir.1983) (dismissing claim because no evidence that supervisor who made adverse personnel decision was aware that plaintiff had engaged in a protected activity). Because Plaintiff cannot establish a prima facie case under Title VII for retaliation, summary judgment is appropriate on this claim. Defendants' objection is therefore granted.

Defendants next object to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiff's claim for intentional interference with a contract. Under this claim, Plaintiff alleges that Harrelson and Rutherford "intentionally made false statements" regarding Plaintiff's integrity to "procure the constructive discharge of the Plaintiff from his employment" and to ruin his reputation as a police officer. (ECF No. 43 at 10.) In the Report, the Magistrate Judge found that because Defendants relied solely on an inapplicable United States Supreme Court case to argue for summary judgment on this claim, there was no basis to grant summary judgment. (ECF No. 101 at 28.) Defendants now offer a new argument as to why this claim fails as a matter of law.

To establish a viable cause of action for wrongful interference with an existing contractual relationship, Plaintiff must establish the following elements: (1) A contract; (2) knowledge of the contract by the wrongdoer; (3) an intentional procurement of the contract's breach; (4) the absence of justification; and (5) damages resulting therefrom. *See Love v. Gamble*, 448 S.E.2d 876, 882 (S.C. Ct. App. 1994). Importantly, "an action for tortious interference protects the property rights of the parties to a contract against

unlawful interference by third parties." *Threlkeld v. Christoph*, 312 S.E.2d 14, 15 (S.C. Ct. App. 1984). A tortious interference with contract claim does not "protect a party to a contract from actions of the other party." *Id.*

Defendants argue that "[b]ecause HCPD is not a third party, and because Harrelson and [Rutherford] are agents of HCPD and [Plaintiff's] immediate supervisors, none may be an 'outsider that intentionally induced the third [party] not to perform his contract.'" (ECF No. 104 at 6 (citing *Threlkeld*, 312 S.E.2d at 16).) Defendants' assertion is supported by South Carolina case law. *See e.g.*, *Farley v. Goodwill Indus. of Lower S.C., Inc.*, No. 4:15-CV-2450, 2016 WL 408949, at *16 (D.S.C. Jan. 12, 2016) *report and recommendation adopted*, 2016 WL 398159 (D.S.C. Feb. 2, 2016) (finding that plaintiff did not establish "a plausible claim of tortious interference with contract against" defendant who, as an agent of plaintiff's employer, was a party to the contract between plaintiff and the employer); *Wencoast Restaurants, Inc. v. Chart Capital Partners, L.P.*, No. 2:05-1650-18, 2006 WL 490101, at *3 (D.S.C. Feb. 28, 2006) (finding plaintiff could not establish an interference with contract claim against defendants who were parties to the contact, including the agents and employees of the defendants).

Accordingly, because Harrelson and Rutherford are agents of Plaintiff's employer, HCPD, Plaintiff cannot maintain an action against them for intentional interference with a contract. Defendant's objection is therefore granted.

Defendants next object to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiff's claim for wrongful termination in violation of public policy. In the Report, the Magistrate Judge found that because Defendants relied solely

on an inapplicable United States Supreme Court case to argue for summary judgment on this claim, there was no basis to grant summary judgment. (ECF No. 101 at 28.) The Magistrate Judge correctly summarized South Carolina law on the "public policy exception" to the doctrine of at-will employment. (ECF No. 101 at 28 (quoting *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 636 (S.C. 2011)).) She noted the findings of the South Carolina Court of Appeals on this issue:

> [A]n at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy." 713 S.E.2d at 637. "The primary source of the declaration of the public policy of the state is the General Assembly; the courts assume this prerogative only in the absence of legislative declaration." *Citizens' Bank v. Heyward*, 135 S.C. 190, 133 S.E. 709, 713 (1925); *see Barron*, 393 S.C. at 617, 713 S.E.2d at 638 (stating the determination of what constitutes public policy for purposes of the public policy exception to the at-will employment doctrine is a question of law for the courts to decide). "The public policy exception clearly applies in cases where either (1) the employer requires the employee to violate the law, or (2) the reason for the employee's termination itself is a violation of criminal law." *Barron*, 393 S.C. at 614, 713 S.E.2d at 637; *see Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 225, 337 S.E.2d 213, 216 (1985) (holding the public policy exception is invoked when an employer requires an at-will employee, as a condition of retaining employment, to violate the law); *Culler v. Blue Ridge Elec. Co-op., Inc.*, 309 S.C. 243, 246, 422 S.E.2d 91, 93 (1992) (finding employee would have a cause of action for wrongful discharge if he was discharged because he refused to contribute to a political action fund). The *Barron* court found the public policy exception is not limited to these two situations; however, the exception has not yet been extended beyond them. 393 S.C. at 614, 713 S.E.2d at 637.

(ECF No. 101 at 28 (quoting *McNeil v. S. Carolina Dep't of Corr.*, 743 S.E.2d 843, 846 (S.C. Ct. App. 2013)).)

Here, Defendants argue that Plaintiff has failed to establish the "public policy" prong of this cause of action. (ECF No. 104 at 7.) Specifically, they note that Plaintiff does not assert he was fired because he refused to violate a criminal law" or that "his

firing resulted in the violation of a criminal law." (*Id.*) Indeed, Plaintiff conceded in deposition that he "probably should have been charged with" misconduct in office in December 2012. (ECF No. 101 at 24.) Thus, it is unclear how Plaintiff alleges that his termination violated public policy. Regardless, the Court finds that Plaintiff has not alleged any facts that would support finding the existence of a public policy exception to at-will employment. *See Barron*, 713 S.E.2d at 637. Accordingly, this claim fails as a matter of law and Defendants' objection is granted.

Finally, Defendants object to the Magistrate Judge's recommendation that summary judgment be denied as to Plaintiff's claim against Rutherford for abuse of process relating to his December 2012 arrest. In the Report, the Magistrate Judge found that because Defendants relied solely on an inapplicable United States Supreme Court case to argue for summary judgment on this claim, there was no basis to grant summary judgment. (ECF No. 101 at 30.) Defendants now argue that Plaintiff has failed to establish the essential elements of this claim.

Under South Carolina law, "[t]he essential elements of abuse of process are: (1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding." *Johnson v. Painter*, 307 S.E.2d 860, 860 (S.C. 1983); *see also Hainer v. Am. Med. Int'l, Inc.*, 492 S.E.2d 103, 107 (S.C. 1997) ("There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.") Usually, the improper purpose is "coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as

the surrender of property or the payment of money, by the use of the process as a threat or club." *Huggins v. Winn-Dixie Greenville, Inc.*, 153 S.E.2d 693, 694 (S.C. 1967).

Defendants argue that Plaintiff has failed to identify "any willful acts" on the part of Rutherford in connection with the 2012 arrest. (ECF No. 104 at 9.) Indeed, the Court finds that, at most, Plaintiff alleges that Rutherford arrested Plaintiff in December 2012 with "bad intentions." *See Hainer*, 492 S.E.2d at 107. Because Plaintiff has failed to allege any facts to support any "ulterior purpose" or "willful acts" on the part of Rutherford in connection with the 2012 arrest, his abuse of process claim fails as a matter of law. Defendants' objection is therefore granted.

Having addressed the parties' specific objections *de novo*, the Court is now tasked with review of the remainder of the Magistrate Judge's conclusions for clear error. Because the Court agrees with the cogent analysis by the Magistrate Judge, it need not discuss those same issues for a second time here—the Court adopts the remainder of the Report.

## **CONCLUSION**

After careful consideration of the relevant motions, responses, and objections, the Court adopts the Report and Recommendation in part. It is, therefore, ORDERED that Defendants' Motion for Summary Judgment (ECF No. 77) is GRANTED and Plaintiff's claims against Defendants Rutherford, Harrelson, Rhodes, Arakas, Thompson, HCSD, and HCPD are DISMISSED *with prejudice*. Because no claims remain against these Defendants, they should be dismissed from this suit.

The Court notes that Defendant Harmon has not filed a dispositive motion as to the claims Plaintiff has raised against her. In addition, Defendants filed a counterclaim against Plaintiff seeking attorneys' fees and costs pursuant to 42 U.S.C. § 1988, (ECF No. 48), to which Plaintiff responded with his own claim under South Carolina's Frivolous Proceedings Sanctions Act, (ECF No. 49). Neither of these counterclaims is before the court at this time. Subsequent to this Order, further scheduling information will be provided by the Magistrate Judge.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
March 25, 2016